# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LEROY COOPER, | 1:15-cv-00908-DAD-GSA-PC |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | **(ECF No. 35.)** |
| EDMUND G. BROWN, JR., et al., | |
| Defendants. | **OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS** |

## I.     BACKGROUND

Jason Leroy Cooper ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with Plaintiff's Second Amended Complaint filed on July 7, 2017, against Dr. Chokatos ("Defendant") on Plaintiff's medical claim under the Eighth Amendment.  (ECF No. 19.)

On May 18, 2018, defendant Chokatos filed a motion for summary judgment on the grounds that: (1) Plaintiff's claim is barred by the applicable statute of limitations, and that (2) Defendant was not deliberately indifferent to Plaintiff's serious medical needs, and there is no genuine dispute of material fact as to Plaintiff's claim for deliberate

indifference.[1]  (ECF No. 35.)   On December 6, 2018, after being granted extensions of time, Plaintiff filed an opposition to the motion.  (ECF No. 48.)  On December 14, 2018, Defendant filed a reply to the opposition.  (ECF No. 49.)

Defendant's motion for summary judgment is now before the court.  Local Rule 230(*l*). For the reasons that follow, the court recommends that the motion be granted.

## II.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires

///

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 35-1.)

Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## III.  SUMMARY OF ALLEGATIONS IN THE SECOND AMENDED COMPLAINT[2]

Plaintiff is currently incarcerated at Mule Creek State Prison in Ione, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR). The events giving rise to this action allegedly occurred at Pleasant Valley State Prison (PVSP) in Coalinga, California, when Plaintiff was incarcerated there.

Plaintiff alleges the following. Plaintiff was transferred to PVSP in November 2011. (ECF No. 19 ¶ 1.) In approximately June 2013, Plaintiff was diagnosed with coccidioidomycosis, or "Valley Fever." (Id. ¶¶ 9–10.) Valley Fever is not a curable disease, and the disseminated form of the disease is progressive, painful, and debilitating, and if left untreated, uniformly fatal once it progresses to meningitis. (Id. ¶¶ 11, 13.) The only medications found to be effective in treating Valley Fever are certain triazole compounds, including Fluconazole dosed at 400 milligrams per day; to be effective, Fluconazole must be taken daily, and lifelong treatment is recommended. (Id. ¶ 14.)

///

---

[2] Plaintiff's Second Amended Complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

California health officials have long known about the prevalence of Valley Fever in the San Joaquin Valley region of the state. In November 2004, the Deputy Director of Health Care Services at the CDCR wrote a memorandum (the "Kanan Memo") to CDCR staff and officials regarding Valley Fever, its origin, and its treatment. (Id. ¶ 16.) The Kanan Memo recognized that triazole compounds, such as Fluconazole, are the only medications known to be effective on inmates with Valley Fever. (Id.) The Kanan Memo was and continues to be widely available to CDCR physicians, including defendant Dr. Chokatos. (Id.) In April 2012, the California Correctional Health Care Services released a report titled "Coccidiodomycosis in California's Adult Prisons, 2006–2010," which concluded that the incidence of Valley Fever has been increasing in some prisons, including PVSP. (Id. ¶ 17.)

Defendant Dr. Chokatos was the primary care physician assigned to Plaintiff by CDCR during the time he was at PVSP. (Id. ¶ 2.) Defendant Chokatos regularly treated patients with Valley Fever and knew that the only medications shown to be effective in treating the disease were triazole compounds, such as Fluconazole. (Id. ¶ 22.) Soon after Plaintiff was diagnosed with Valley Fever, he requested that defendant Dr. Chokatos start him on Fluconazole. (Id. ¶¶ 23–24.) Defendant Chokatos refused. (Id. ¶ 24.) During the next sixteen months Plaintiff's symptoms worsened and he repeatedly reported his symptoms to defendant Chokatos while requesting Fluconazole; but on each occasion, defendant Chokatos refused to provide such treatment. (Id. ¶ 25.) As a result of his refusal Plaintiff alleges that the disease progressed causing him to suffer body aches, joint pain, and severe and debilitating fatigue. (Id. ¶ 26.) Finally, in September 2014, defendant Chokatos prescribed Fluconazole. (Id. ¶ 27.) The treatment eased his symptoms and appeared to slow the progression of the disease. (Id.) By that time, however, the delay in treatment had caused Plaintiff's disease to progress causing additional and worsening symptoms and suffering. (Id. ¶ 28.)

In this action, Plaintiff seeks monetary and declaratory relief.

///

///

///

## IV. UNDISPUTED FACTS (UF)

The following facts derive from Defendant's statement of undisputed material facts, (ECF No. 35-5), Plaintiff's responses to those statements, (ECF No. 48 ), evidence cited in those statements, and the court's review of the record.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 1. Plaintiff Jason Leroy Cooper filed his original Complaint in this matter on June 1, 2015. He filed his First Amended Complaint on May 25, 2016. He filed his Second Amended Complaint on April 30, 2017. | Compl. 19 (ECF No. 1); First Am. Compl. 6 (ECF No. 12); Second Am. Compl. 13 (ECF No. 19). Court's finding: undisputed.[3] |
| 2. Cooper currently alleges that he was damaged because from late 2012 to September 2014, Dr. Chokatos did not prescribe Fluconazole for Cooper. | Second Am. Compl. ¶¶ 23-27 (ECF No. 19); Cooper Dep. 32:16-19 (Duggan Decl. Ex. I). Court's finding: undisputed.[4] |
| 3. Cooper's original Complaint did not address Fluconazole, Cooper's medical treatment, or Dr. Chokatos. Instead it focuses on Cooper's alleged contraction of Valley Fever. | Compl. (ECF No. 1). Court's finding: undisputed.[5] |
| 4. Cooper filed an administrative grievance on August 14, 2014, Appeal PVSP HC 14050888, requesting different treatment for alleged Valley Fever symptoms. | Gates Decl. ¶ 9; Patient-Inmate Healthcare Appeal (Gates Decl. Ex. D at 3). Court's finding: disputed in part.[6] |

---

[3] Plaintiff admitted UF No. 1. (ECF No. 48 at 1.) Therefore, the court finds UF No. 1 to be undisputed. However, the court is aware that the parties have agreed to the dates that Plaintiff's complaints were purportedly filed under the mailbox rule of Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379 (1988), which provides that a *pro se* prisoner's court filing is deemed filed at the time the prisoner delivers it to prison authorities for forwarding to the court clerk. Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009). (See ECF No. 35-2 at 5:7-8.) The court's record shows that Plaintiff's original Complaint was filed with the court on June 15, 2015 (ECF No. 1); Plaintiff's First Amended Complaint was filed with the court on June 9, 2016 (ECF No. 12); and Plaintiff's Second Amended Complaint was filed with the court on July 7, 2017 (ECF No. 19). (Court Record.)

[4] Plaintiff admitted UF No. 2. (ECF No. 48 at 2.) The court finds UF No. 2 to be undisputed.

[5] Plaintiff admitted UF No. 3. (Id.) The court finds UF No. 3 to be undisputed.

[6] Plaintiff disputed UF No. 4 as follows: "Denied. In that HC 602, Plaintiff requested treatment. He had not received ANY treatment so could not ask for 'different' treatment." (Id.) The court finds UF No. 4 to be disputed in part. However, it is not disputed that Plaintiff filed an administrative grievance on August 14, 2014, Appeal PVSP HC 14050888, requesting treatment with Fluconazole for Valley Fever symptoms.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 5. Appeal log no. PVSP HC 14050888 was Plaintiff's only grievance regarding his treatment for alleged Valley Fever symptoms. | Gates Decl. ¶¶ 8-9; Appeal History for (F40950) Jason Cooper (Gates Decl. Ex. C); Patient-Inmate Healthcare Appeal (Gates Decl Exs. D-F).<br><br>Court's finding: disputed in part.[7] |
| 6. On October 2, 2014 Appeal log no. PVSP HC 14050888 was partially granted at the first level after Cooper was prescribed Fluconazole. Cooper did not pursue the grievance further. | Patient-Inmate Healthcare Appeal (Gates Decl. Ex. D at 1).<br><br>Court's finding: undisputed.[8] |
| 7. In his Second Amended Complaint, Cooper asserts he exhausted administrative remedies through grievance log number PVSP-14-01945. | Second Am. Compl. ¶ 28 (ECF No. 19).<br><br>Court's finding: undisputed.[9] |
| 8. Grievance log number PVSP-14-01945 complains that prison officials were negligent in their dust abatement procedures and policies for windy days, which resulted in Cooper contracting Valley Fever. The grievance does not mention any subsequent treatment, and does not mention Dr. Chokatos. | Inmate/ Parolee Appeal (Voong Decl. Ex. H at 3-6).<br><br>Court's finding: undisputed.[10] |

---

[7] Plaintiff disputed UF No. 5 as follows: "Denied. The symptoms were not simply 'alleged,' they were real. Also, multiple oral grievances on the issue were made." (Id.) Therefore, the court finds UF No. 5 to be disputed in part. However, it is not disputed that appeal log number PVSP-HC-14050888 was Plaintiff's only *written* grievance regarding his treatment for his reported symptoms. The court finds UF No. 5 to be undisputed to the extent that it addresses written and not oral grievances and Plaintiff's reported symptoms.

[8] Plaintiff admitted UF No. 6, adding, "Plaintiff was told that he could not seek monetary damages through the 602 process." (Id.) Plaintiff's statement does not cause a dispute of any part of UF No. 6. Therefore, the court finds UF No. 6 to be undisputed.

[9] Plaintiff admitted UF No. 7 but states that "[t]his appears to be an inadvertent error of referencing the wrong 602 which can be corrected by amendment." (Id.) Therefore, the court finds UF No. 7 to be undisputed to the extent that it reflects Plaintiff's allegations in the Second Amended Complaint.

[10] Plaintiff admitted UF No. 8 stating, "See response to number 7 above." (Id.) The court finds UF No. 8 to be undisputed to the extent that it reflects the contents of Plaintiff's grievance log number PVSP-14-01945.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 9. Cooper's Second Amended Complaint states that in June 2013, he was diagnosed with Valley Fever, and "requested that Defendant Chokatos start him on Fluconazole to alleviate the symptoms and prevent further progression of the disease." | Second Am. Compl. ¶ 23-24 (ECF No. 19). Court's finding: undisputed.[11] |
| 10. Cooper's Second Amended Complaint alleges that between June 2013 and September 2014 he had several encounters with Dr. Chokatos and repeatedly requested Fluconazole, which requests Dr. Chokatos refused. | Second Am. Compl. ¶ 25 (ECF No. 19). Court's finding: undisputed.[12] |
| 11. Cooper's Second Amended Complaint alleges that in September 2014 Dr. Chokatos prescribed Fluconazole for Cooper. | Second Am. Compl. ¶ 27 (ECF No. 19). Court's finding: undisputed.[13] |
| 12. Cooper's medical records show that it was nurse practitioner Ogbuehi who prescribed Fluconazole for Cooper in September 2014, not Dr. Chokatos. | Cooper Dep. 38:12-39:6, and Ex. 3 (Duggan Decl. Exs. I-J); Feinberg Decl. ¶¶ 26, 39. Court's finding: undisputed.[14] |
| 13. Coccidioidomycosis is an infection caused by inhalation of spores of fungi of the genus *Coccidioides*. When coccidioidomycosis causes acute pneumonia, the condition is known commonly as "Valley Fever." | Chokatos Decl. ¶ 12; Carol A. Kauffman, et al., Primary Coccidioidal Infection 1 (Chokatos Decl. Ex. B) (hereinafter "Kauffman"). Court's finding: undisputed.[15] |
| 14. The most common symptoms of coccidioidomycosis are chest pain, cough, and fever. | Chokatos Decl. ¶ 13; Kauffman at 3; Feinberg Decl. ¶ 39a. Court's finding: undisputed. [16] |

[11] Plaintiff admitted UF No. 9. (Id.) The court finds UF No. 9 to be undisputed.

[12] Plaintiff admitted UF No. 10. (Id. at 3.) The court finds UF No. 10 to be undisputed.

[13] Plaintiff admitted UF No. 11. (Id.) The court finds UF No. 11 to be undisputed.

[14] Plaintiff disputed UF No. 12 as follows: "Denied. The nurse practitioner works directly under Defendant and prescribes pursuant to his authority." (Id.) Plaintiff's statement does not cause a dispute of any part of UF No. 12. Therefore, the court finds UF No. 12 to be undisputed.

[15] Plaintiff admitted UF No. 13. (Id.) The court finds UF No. 13 to be undisputed.

[16] Plaintiff admitted UF No. 14. (Id.) The court finds UF No. 14 to be undisputed.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 15. It is estimated that more than half of cases of coccidioidomycosis are never diagnosed. The symptoms are non-specific and in many cases the infection resolves on its own without specific therapy. | Chokatos Decl. ¶14; Kauffman at 3-4; Feinberg Decl. ¶ 39a<br><br>Court's finding: undisputed.[17] |
| 16. In cases where it does not resolve on its own, coccidioidomycosis may disseminate, or spread outside the lungs and cause serious health problems. | Chokatos Decl. ¶16; Feinberg Decl. ¶ 39a.<br><br>Court's finding: undisputed.[18] |
| 17. If coccidioidomycosis is suspected, the patient is evaluated with serological testing, in which a blood sample is taken and tested for presence of antibodies to coccidioides fungus. The result is a "titer," which can be 0, 1:2, 1:4, 1:8, 1:16, etc. The higher the second number, the more antibodies and the worse the infection. Titers of 1:2 and 1:4 are considered insignificant, indicating only that the patient was exposed to the fungus and had an immune response to it. | Chokatos Decl. ¶15; Kauffman at 3, 8; Cooper medical records (Duggan Decl. Ex. K at 8); Feinberg Decl. ¶ 11.<br><br>Court's finding: undisputed.[19] |
| 18. Where a patient presents without evidence of extensive coccidioidal infection, and without risk factors for dissemination of the infection, such as HIV or pregnancy, antifungal treatment, such as Fluconazole, is not medically necessary. | Chokatos Decl. ¶¶15-16, Kauffman at 5; Feinberg Decl. ¶ 39 a-b.<br><br>Court's finding: undisputed.[20] |

[17] Plaintiff admitted UF No. 15. (Id.) The court finds UF No. 15 to be undisputed.

[18] Plaintiff admitted UF No. 16. (Id.) The court finds UF No. 16 to be undisputed.

[19] Plaintiff disputed UF No. 17, as follows: "Denied. If a patient has a Titer score of 1:2 and 1:4, that is not insignificant if the patient has preexisting risk factors including [a] cardiopulmonary condition such as asthma. Plaintiff suffers from such a preexisting risk factor, a condition documented in his medical file." (Id. at 3-4.) Here, Plaintiff offers his opinion that his asthma is a preexisting risk factor and therefore he should have been prescribed Fluconazole. Plaintiff's opinion that his asthma was a risk factor is not admissible evidence because Plaintiff is a layperson not qualified to give an expert medical opinion about whether he had a preexisting risk factor making antifungal medication treatment necessary. Federal Rule of Evidence 701. Therefore, the court finds UF No. 17 to be undisputed.

[20] Plaintiff denied UF No. 18, as follows: "Denied. As set forth above, Plaintiff did in fact have a preexisting risk factor making antifungal medication treatment necessary." (Id. at 4.) Here, Plaintiff offers his

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 19. Plaintiff Cooper is not a doctor, nor is he a medical expert. | Cooper Dep. 20:18-24, 36:6-15 (Duggan Decl. Ex. I).<br><br>Court's finding: undisputed.[21] |
| 20. According to Cooper's Second Amended Complaint, once Fluconazole was prescribed, in September 2014, Plaintiff's alleged symptoms eased. According to the Second Amended Complaint, the alleged delay in prescribing Fluconazole caused Cooper's suffering from body aches, joint pain, fatigue, and emotional distress. | Second Am. Compl. ¶ 27.<br><br>Court's finding: undisputed.[22] |
| 21. From November 2012 to September 2014, Dr. Chokatos saw Cooper for eight medical encounters. | Chokatos Decl. ¶ 19; Cooper medical records (Duggan Decl. Ex. K at 2-18).<br><br>Court's finding: undisputed.[23] |
| 22. Coccidioidomycosis is first mentioned in Cooper's medical records in April 2013, when Cooper sought testing to rule out hepatitis C and coccidioidomycosis because of feelings of fatigue and weakness. In May 2013, Cooper's first coccidioidomycosis test showed a titer of 1:2. Considering Cooper's symptoms at that time, Dr. Chokatos determined that Fluconazole was not warranted. | Chokatos Decl. ¶¶ 16, 19, 24, 37; Cooper medical records (Duggan Decl. Ex. K at 7-10); Feinberg Decl. ¶¶ 10-13.<br><br>Court's finding: undisputed.[24] |

own medical opinion, which is not admissible evidence because Plaintiff is a layperson not qualified to give an expert medical opinion about whether he had a preexisting risk factor making antifungal medication treatment necessary. Federal Rule of Evidence 701. Moreover, Plaintiff's statement does not cause a dispute with any part of UF No. 18. Therefore, the court finds UF No. 18 to be undisputed.

[21] Plaintiff admitted UF No. 19. (Id.) The court finds UF No. 19 to be undisputed.

[22] Plaintiff admitted UF No. 20. (Id.) The court finds UF No. 20 to be undisputed

[23] Plaintiff admitted UF No. 21. (Id.) The court finds UF No. 21 to be undisputed.

[24] Plaintiff admitted UF No. 22, "except to the extent of Dr. Chokatos's conclusions being correct. Dr. Chokatos never considered Plaintiff's preexisting risk factors in his decision to deny care in violation of his own guidelines." (Id.) Here, Plaintiff disagrees with Dr. Chokatos's evaluation and conclusion. However, Plaintiff's disagreement, without more, does not create a dispute of fact about what Dr. Chokatos considered and concluded, because Plaintiff is a layperson not qualified to give an expert medical opinion. Federal Rule of Evidence 701. Therefore, the court finds UF No. 22 to be undisputed.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 23. At Dr. Chokatos's next encounter with Cooper, on July 12, 2013, Dr. Chokatos evaluated Cooper's symptoms and again determined no specific treatment for coccidioidomycosis was necessary. | Chokatos Decl. ¶ 25; Cooper medical records (Duggan Decl. Ex. K at 11-12); Feinberg Decl. ¶¶ 14-15.<br><br>Court's finding: undisputed.[25] |
| 24. At Dr. Chokatos's next encounter with Cooper, on November 26, 2013, Dr. Chokatos evaluated Cooper's symptoms and again determined no specific treatment for coccidioidomycosis was necessary. On that occasion, Cooper's titer score was again reported at 1:2. Dr. Chokatos concluded Cooper's coccidioidomycosis had been successfully treated. | Chokatos Decl. ¶ 27; Cooper medical records (Duggan Decl. Ex. K at 15-16); Feinberg Decl. ¶¶ 15, 18.<br><br>Court's finding: undisputed.[26] |
| 25. At Dr. Chokatos's next encounter with Cooper, on January 7, 2014, Dr. Chokatos treated Cooper for shoulder pain. Dr. Chokatos also evaluated Cooper's symptoms and found no symptoms of coccidioidomycosis. | Chokatos Decl. ¶ 28; Cooper medical records (Duggan Decl. Ex. K at 17-18); Feinberg Decl. ¶ 20.<br><br>Court's finding: undisputed.[27] |
| 26. After January 7, 2014, Cooper did not have a medical encounter with Dr. Chokatos until January 2015. | Chokatos Decl. ¶¶ 28-33.<br><br>Court's finding: undisputed.[28] |

[25] Plaintiff admitted UF No. 23 but added, "[o]nce again, Dr. Chokatos failed to consider Plaintiff's preexisting risk factors." (Id.) Plaintiff's opinion about whether Plaintiff had preexisting risk factors is not admissible evidence because Plaintiff is a layperson not qualified to give an expert medical opinion about whether he had a preexisting risk factor. Federal Rule of Evidence 701. The court finds UF No. 23 to be undisputed.

[26] Plaintiff denied UF No. 24 as follows: "Denied. Because no treatment was ordered until 2014, Plaintiff's symptoms for Valley Fever could not have been successfully treated. This encounter concerned a shoulder injury and not Valley Fever." (Id. at 5.) Plaintiff's statements do not cause a dispute with any part of UF No. 24, which describes what Dr. Chokatos did and what he concluded. Therefore, the court finds UF No. 24 to be undisputed.

[27] Plaintiff denied UF No. 25 as follows: "Denied. A Titer score of 1.2 does not indicate a lack of infection and with the preexisting risk factor Plaintiff should have received treatment." (Id.) Plaintiff's statement of his opinion does not cause a dispute with any part of UF No. 25, which describes what happened at the January 7, 2014 visit. Therefore, the court finds UF No. 25 to be undisputed.

[28] Plaintiff admitted UF No. 26 "to the extent that the encounter was personal and not through other medical personnel under his management." (Id.) The court finds UF No. 26 to be undisputed to the extent

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 27. Cooper had medical encounters with other CDCR medical practitioners (not Dr. Chokatos) on January 15, 2014, May 10, 2014, and May 19, 2014. | Chokatos Decl. ¶¶ 29-30; Cooper medical records (Duggan Decl. Ex. K at 19-24); Feinberg Decl. ¶¶ 21-23.<br><br>Court's finding: undisputed.[29] |
| 28. In August 2014, Cooper saw a CDCR nurse practitioner and complained of fatigue. A coccidioidomycosis test was ordered. In September 2014, the test result came back. The test result was again 1:2, indicating no active disease. Despite the only symptom being fatigue, nurse practitioner Ogbuehi approved a Fluconazole prescription for Cooper. | Chokatos Decl. ¶¶ 30-31; Cooper medical records (Duggan Decl. Ex. K at 25-29); Feinberg Decl. ¶¶ 24-26.<br><br>Court's finding: undisputed.[30] |
| 29. On January 30, 2015, Dr. Chokatos saw Cooper for a follow-up appointment. Dr. Chokatos noted Cooper had a Fluconazole prescription despite the treatment not being medically indicated. Cooper had no symptoms of a significant coccidioidomycosis infection. Dr. Chokatos ordered a coccidioidomycosis test and a follow up appointment. | Chokatos Decl. ¶ 33; Cooper medical records (Duggan Decl. Ex. K at 31-32); Feinberg Decl. ¶ 27.<br><br>Court's finding: undisputed. [31] |

that the encounter was personal as to Dr. Chokatos and not through other medical personnel under Dr. Chokatos's management.

[29] Plaintiff admitted UF No. 27, adding that "[t]he other medical practitioners all reported to Defendant as their superior." (Id.) Plaintiff's statement does not cause a dispute with any part of UF No. 27. Therefore, the court finds UF No. 27 to be undisputed.

[30] Plaintiff admitted UF No. 28, "except for the clause stating that Fluconazole was prescribed 'despite there being no indication of active disease.' Because of Plaintiff's preexisting risk factor, Fluconazole was the admittedly correct prescription." (Id.) Plaintiff's statements do not cause a dispute with any part of UF No. 28, which describes what happened at his August 2014 and September 2014 visits. Moreover, Plaintiff's opinion about whether there was indication of active disease or whether he had a preexisting risk factor and needed treatment with Fluconazole is not admissible evidence because Plaintiff is a layperson who is not qualified to give a medical opinion. Federal Rule of Evidence 701. Therefore, the court finds UF No. 28 to be undisputed.

[31] Plaintiff admitted UF No. 29, adding that "[t]he Fluconazole prescribed by the nurse practitioner had alleviated the symptoms [and] [t]he nurse practitioner worked under Dr. Chokatos's authority and supervision per CDCR medical procedures." (Id.) The Court here need not address whether Plaintiff's opinion that the Fluconazole alleviated his symptoms is admissible evidence as it does not refute Defendant's statement of fact. Therefore, the court finds UF No. 29 to be undisputed.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 30. On April 17, 2015 the test results came back with a titer of zero. Since Cooper had no other symptoms of valley fever, the Fluconazole prescription was discontinued. | Chokatos Decl. ¶ 34; Cooper medical records (Duggan Decl. Ex. K at 39-41); Feinberg Decl. ¶ 30.<br><br>Court's finding: undisputed.[32] |
| 31. Cooper is sentenced to life without the possibility of parole. | Cooper Dep. 35:11-12 (Duggan Decl. Ex. I).<br><br>Court's finding: undisputed.[33] |
| 32. Cooper was not diagnosed with Valley Fever in the 2012-2016 time frame. | Chokatos Decl. ¶ 38; Feinberg Decl. ¶ 24.<br>Court's finding: undisputed.[34] |
| 33. Dr. Chokatos determined that in 2012-2016, Cooper did not have symptoms indicating a Fluconazole prescription was medically necessary. | Chokatos Decl. ¶ 37; Feinberg Decl. ¶ 39.<br>Court's finding: undisputed.[35] |
| 34. At his deposition, Cooper testified that he believed taking Fluconazole reduced his cough, but did not affect his aches and pains. | Cooper Dep. 30:1-12 (Duggan Decl. Ex. I).<br><br>Court's finding: undisputed.[36] |

---

[32] Plaintiff admitted UF No. 30, adding that "[t]he Fluconazole treatment had been proven effective." (Id. at 6.) Plaintiff's statement does not cause a dispute with any part of UF No. 30. Moreover, Plaintiff's opinion about the effectiveness of Fluconazole is inadmissible evidence because Plaintiff is a layperson. Federal Rule of Evidence 701. Therefore, the court finds UF No. 30 to be undisputed.

[33] Plaintiff admitted UF No. 31. (Id.) The court finds UF No. 31 to be undisputed.

[34] Plaintiff denied UF No. 32 "on information and belief." (Id.) Plaintiff's vague denial, unsupported by any admissible evidence, does not cause a genuine dispute of fact. Therefore, the court finds UF No. 32 to be undisputed.

[35] Plaintiff admitted UF No. 33, adding that "Dr. Chokatos failed to consider Plaintiff's preexisting risk factor as required by his own guidelines." (Id.) Plaintiff's statement does not cause a dispute with any part of UF No. 33, which states that Dr. Chokatos made the determination that he did. Therefore, the court finds UF No. 33 to be undisputed.

[36] Plaintiff denied UF No. 34, stating, "This is a misleading and incomplete conclusion." (Id.) Plaintiff's statement does not cause a dispute with the fact that he testified at his deposition as stated in UF No. 34. Therefore, the court finds UF No. 34 to be undisputed.

| Defendant's Undisputed Material Facts | Supporting Evidence, Plaintiff's Reponse, and Court's Finding |
|---|---|
| 35. In his Second Amended Complaint, Cooper alleges that Dr. Chokatos acted in "conscious disregard" of excessive risk to Cooper. | Second Am. Compl. ¶ 35.<br><br>Court's finding: undisputed.[37] |
| 36. Dr. Chokatos did not knowingly or intentionally act to cause Cooper to experience any pain, suffering, or injury. | Chokatos Decl. ¶ 38; Feinberg Decl. ¶¶ 39-40; Cooper Dep. 36:25-37:11 (Duggan Decl. Ex. I).<br><br>Court's finding: disputed.[38] |

## V.  STATUTE OF LIMITATIONS

Defendant argues that Plaintiff's medical claim is barred by the applicable statute of limitations.

### A.  Legal Standards

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  The statute of limitations for personal injury actions under California law is two years.  See Cal. Code Civ. P. § 335.1; see also Jones, 393 F.3d at 927.

California Code of Civil Procedure § 352.1 provides for the tolling of the statute of limitations for a maximum of two additional years for persons incarcerated for a term less than life at the time the claim accrues.  It states:

> If a person entitled to bring an action . . . is, at the time the cause of action accrued, imprisoned on a criminal charge . . . for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Code Civ. P. § 352.1.

---

[37] Plaintiff admitted UF No. 35.  (Id.)  The court finds UF No. 35 to be undisputed.

[38] Plaintiff denied UF No. 36, stating, "Dr. Chokatos failed to consider Plaintiff's preexisting risk factors as required by his own guidelines."  (Id.)  UF No. 36 is a legal conclusion about whether Defendant was deliberately indifferent, which is the disputed subject of this case.  Therefore, the court finds UF No. 36 to be a disputed conclusion of law.

The Ninth Circuit has held that prisoners are also entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. Brown v. Valoff, 422 F.3d 926, 942–943 (9th Cir. 2005). The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations - timely notice to the defendant of the plaintiff's claims - has been satisfied, McDonald v. Antelope Valley Community College District, 45 Cal.4th 88, 99 (2008) (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff. Id. at 101–03.

**B.    Defendant's Motion**

Defendant argues that Plaintiff's lawsuit is barred by the two-year statute of limitations, because it was more than two years between January 7, 2014, when Dr. Chokatos's last alleged act or omission took place, and May 25, 2016, when Plaintiff brought his claim in the First Amended Complaint. (UF Nos. 1, 3.) Because Plaintiff is serving a life sentence without parole, (UF No. 31), Defendant asserts that Plaintiff is not eligible for additional tolling of up to two years under Cal. Code Civ. P. § 352.1 for prisoners serving "a term less than for life." Defendant allows, however, that Plaintiff is eligible for 49 days additional tolling for the time spent exhausting his administrative remedies because Plaintiff's only written administrative grievance regarding the claims in this case, (UF No. 7-8), was submitted on August 14, 2014, and partially granted 49 days later on October 2, 2014, and Plaintiff did not pursue the grievance further. (UF Nos. 4-6.) Defendant therefore concludes that Plaintiff's causes of action are barred in this lawsuit.

Defendant also argues that under applicable federal law,[39] Plaintiff knew of his injury -- and his claim accrued -- at least as early as June 2013, because Plaintiff's Second Amended

---

[39] "'[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.' Wallace v. Kato, 549 U.S. 3884, 388 (2007) (emphasis in original). 'Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.' TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)." (Defendant's motion, ECF 35-2 at 6.C.)

Complaint states that in June 2013, immediately after receiving his first 1:2 titer score, he "requested that Defendant Chokatos start him on Fluconazole to alleviate the symptoms and prevent further progression of the disease." (UF Nos. 9, 11.)

Further, Defendant argues that to the extent Plaintiff may argue that part of his claim accrued after April 7, 2014 because he did not receive Fluconazole until September 2014, (UF No. 2), the continuing violation doctrine does not preserve his claim because Plaintiff did not see Dr. Chokatos during that time period, (UF Nos. 9-12), and Plaintiff is alleging only continuing impact, which is not actionable.

The court finds that Defendant has met his burden of demonstrating that Plaintiff's medical claim is barred by the applicable statute of limitations. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

### C.    Discussion

The parties do not dispute that under the applicable statute of limitations, Plaintiff had at least two years after his medical claim had accrued in which to bring his medical claim. Also, the parties agree that Plaintiff brought his medical claim on May 25, 2016, the date he filed the First Amended Complaint under the mailbox rule. (UF Nos. 1, 3.) There is no dispute that the two-year statute of limitations was tolled for an additional 49 days while Plaintiff exhausted his administrative remedies, giving Plaintiff 2 years and 49 days in which to bring his claim. The parties do not dispute any of these facts.

The parties' disagreement is about the date that Plaintiff's medical claim accrued, which is a question of law. Although state statutes of limitations and tolling principles apply, "[f]ederal law determines when a federal civil rights claim accrues." Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) (internal citation omitted). Under federal law, a § 1983 action accrues, and the statute of limitations begins to run, when the defendant's alleged wrongful act or omission causes damages. See Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In this regard, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado, 370 F.3d at 955.

Defendant argues that Plaintiff's claim accrued in June 2013, immediately after Plaintiff received his first 1:2 titer score, when he "requested that Defendant Chokatos start him on Fluconazole to alleviate the symptoms and prevent further progression of the disease," (UMF No. 9), because that was when Plaintiff knew of his injury.

In opposition, Plaintiff argues that his claim was preserved by the continuing violation doctrine and did not accrue until October 2, 2014, the date when Plaintiff's health care appeal was granted and Dr. Chokatos was ordered to provide Plaintiff with Fluconazole.

Here, the undersigned finds that the continuing violation doctrine brings Plaintiff's initiation of this case well within the statute of limitations. In another prisoner civil rights action in which the plaintiff claimed deliberate indifference to his serious medical needs, another Magistrate Judge of this court explained the doctrine as follows:

> The continuing violation doctrine is an equitable doctrine designed "to prevent a defendant from using its earlier illegal conduct to avoid liability for later illegal conduct of the same sort." O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000). To establish a continuing violation, a plaintiff must show "a series of related acts against a single individual ... that ... 'are related closely enough to constitute a continuing violation.'" Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 148081 (9th Cir. 1989) (quoting Bruno v. Western Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987)). However, the mere continuing impact from a past violation is not actionable under the continuing violation doctrine. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (citing Grimes v. City and County of San Francisco, 951 F.2d 236, 238–39 (9th Cir. 1991)).
>
> Although the Ninth Circuit has not applied the continuing violation doctrine to Eighth Amendment deliberate indifference claims, several other circuits have. See Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001) (finding that continuous violation doctrine applied to defendants' deliberate indifference for the span of time that prison officials were aware of plaintiff's injury and allegedly refused to treat it); Lavellee v. Listi, 611 F.2d 1129, 1132 (5th Cir. 1980) ("[T]he [arrestee's] allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided."); Neel v. Rehberg, 577 F.2d 262, 263–64 (5th Cir. 1978) (per curiam) (finding that where inmate alleged that jail officials failed to provide medical treatment over a three-month period, the continuous violation doctrine applied and the statute of limitations did not begin to run until the end of that period); see also Evans v. County of San Diego, No. 06 CV 0877 JM (RBB), 2008 WL 842459, at *12 (S.D.Cal. Mar. 27, 2008) (applying continuing violation doctrine to prisoner's Eighth Amendment medical treatment claim).

Gipbsin v. Kernan, No. 2:12-CV-0556 GEB DAD, 2015 WL 3993073, at *3 (E.D.Cal. June 30, 2015), report and recommendation adopted, No. 2:12-CV-0556 GEB DAD, 2015 WL 4602774

(E.D.Cal. July 28, 2015) (quoting <u>Martin v. Woodford</u>, No. 1:08–cv–0415 LJO SKO PC, 2010 WL 2773235 at *4–*5 (E.D.Cal. July 13, 2010), adopted by 2010 WL 3853305 (E.D.Cal. Sept.29, 2010), aff'd, Case No. 11015830, 2013 WL 29792 (9th Cir. Jan. 3, 2013).

The Court in Gipbsin continued,

> District courts in the Ninth Circuit have consistently recognized the continuing violation doctrine in prisoner civil rights cases. <u>See</u>, <u>e.g.</u>, <u>Watson v. Sisto</u>, No. 2:07–cv–01871 LKK KJN P, 2011 WL 533716 at *5 (E.D.Cal. Feb. 14, 2011) (applying continuing violation doctrine to plaintiff's claim that the prison health system, as administered by doctors and staff, consistently failed to provide adequate medical care for plaintiff's back condition); <u>Evans v. County of San Diego</u>, No. 06 CV 0877 JM (RBB), 2008 WL 842459 at *12 (S.D.Cal. Mar.27, 2008) (applying the continuing violation doctrine to plaintiff's deliberate indifference claim because the claim was not based on the original knee injury but rather on defendants' ongoing failure to treat the injury); <u>see also</u>, <u>e.g.</u>, <u>MacGregor v. Dial</u>, No. 2:13–cv–1883 JAM AC P, 2015 WL 1405492 at *9 (E.D.Cal. Mar. 25, 2015) (finding that the continuing violation doctrine did not apply because the plaintiff's allegations were based on discrete acts of deliberate indifference); <u>Navarro v. Herndon</u>, No. 2:09–cv–1878 KJM KJN P, 2011 WL 3741351 at *8 (E.D.Cal. Aug. 24, 2011) (finding that continuing violation doctrine did not apply because each mental health diagnosis and placement was discrete with its own consequences), adopted in part and rejected in part on other grounds by 2011 WL 4578534 (E.D.Cal. Sept. 30, 2011).

<u>Gipbsin</u>, 2015 WL 3993073, at *3.

In this case, Plaintiff's claim is based on defendant Chokatos's alleged failure to treat Plaintiff's Valley Fever symptoms with the medication Fluconazole for more than a year despite multiple complaints from Plaintiff. "A violation is called 'continuing,' signifying that a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." <u>Heard</u>, 253 F.3d at 319; <u>accord</u> <u>Cleveland v. Los Angeles County Sheriff's Department</u>, No. 215CV01399DSFGJS, 2017 WL 1364227, at *10-11 (C.D.Cal. Feb. 7, 2017), <u>report and recommendation adopted sub nom.</u> <u>Cleveland v. Los Angeles Cty. Sheriff's Dep't</u>, No. 215CV01399DSFGJS, 2017 WL 1386003 (C.D.Cal. Apr. 11, 2017). "Not only would it be unreasonable to require [Plaintiff], as a condition of preserving his right to have a full two years to sue in respect of the last day on which his request was ignored, to bring separate suits two years after each of the earlier days of deliberate indifference, but it would impose an unreasonable burden on the courts to entertain

an indefinite number of suits and apportion damages among them." <u>Heard</u>, 253 F.3d at 319-20; <u>accord</u> <u>Turley v. Rednour</u>, 729 F.3d 645, 651 (7th Cir. 2013).

In this regard, application of the continuing violation doctrine is appropriate because Plaintiff complains of a continual unlawful act. <u>Gipbsin</u>, 2015 WL 3993073, at *4. Under the continuing violation doctrine, the statute of limitations for Plaintiff's filing of the present action did not begin to run until Plaintiff was prescribed Fluocazole by nurse practitioner Ogbuehi in September 2014. <u>See</u> <u>Heard</u>, 253 F.3d at 319 (cause of action accrues on the last day officials refused to treat inmate's medical condition or on the date he left the jail). Plaintiff commenced this cause of action on May 25, 2016, less than two years later and therefore, the case falls within the applicable two-year statute of limitations with tolling of 49 days while Plaintiff exhausted his administrative remedies, and is timely.[40]

Accordingly, for all of the foregoing reasons, Defendant's motion for summary judgment based on the statute of limitations should be denied.

## VI.    EIGHTH AMENDMENT MEDICAL CLAIM

### A.    <u>Legal Standards</u>

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, <u>Peralta v. Dillard</u>, 744 F.3d 1076, 1082-83 (9th Cir. 2014); <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u>

---

[40] Even using the date Plaintiff filed the First Amended Complaint with the court, June 9, 2016, the case still falls within the applicable statute of limitations.

other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060, overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, a plaintiff "must show that the

course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

### B.    Parties' Arguments

Defendant argues that Plaintiff's complaint rests solely on a mere difference of opinion between a prisoner-patient and prison medical provider, and the medical course of treatment for Plaintiff was medically acceptable.  Defendant declares, and offers as evidence Plaintiff's medical records, Dr. Feinstein's declaration, and Dr. Kauffman's article, that in April 2013, Plaintiff requested a coccidioidomycoses test, and the results showed a titer of 1:2, which indicated that Plaintiff was exposed to the coccidioides fungus and had an immune response, but does not indicate active disease, UF Nos. 17, 22 (Chokatos Decl. ¶¶15, 16, 19, 24, 37; Kauffman at 3, 8; Cooper medical records (Duggan Decl. Ex. K at 7-10); Feinberg Decl. ¶¶ 10, 11, 13.)  Defendant provides evidence that in the following months he monitored Plaintiff's condition, repeated the test again in November 2013, which again showed a titer of 1:2, and considered the condition was successfully treated.  UF No. 24 (Chokatos Decl. ¶ 27; Cooper medical records (Duggan Decl. Ex. K at 15-16); Feinberg Decl. ¶¶ 15, 18.)  Because Plaintiff is not a doctor and has no medical training, UF No. 19 (Cooper Dep. 20:18-24, 36:6-15 (Duggan Decl. Ex. I)), Defendant concludes that Plaintiff's disagreement with his assessment is not credible evidence.

Defendant also argues that he did not consciously disregard a risk to Plaintiff's health. Defendant declares, and offers Dr. Feinberg's declaration and Plaintiff's deposition testimony[41] to show, that he did not act with any such conscious disregard and his goal was to provide Plaintiff with the proper medical care.  UM No. 36 (Chokatos Decl. ¶ 38; Feinberg Decl. ¶¶ 39-40; Cooper Dep. 36:25-37:11 (Duggan Decl. Ex. I).  Defendant offers his and Dr. Feinberg's

///

---

[41] "Q.  How can you know what was in Dr. Chokatos' mind?
A.  I can't."
(Cooper Depo. 36:25-37:11, ECF No. 35-7 at 22:10-11.)

opinions that Fluconazole simply was not medically indicated for Plaintiff, and accordingly Defendant did not prescribe it. UF No. 33 (Chokatos Decl. ¶ 37; Feinberg Decl. ¶ 39).

Based on Defendant's arguments and evidence in support of his motion for summary judgment, the court finds that Defendant has met his burden of demonstrating that his course of medical treatment was medically acceptable and he did not act with deliberate indifference to Plaintiff's serious medical need. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

In opposition, Plaintiff argues that he had a serious medical need because he was diagnosed with Valley Fever and Defendant refused to prescribe him the only medication proven to be effective in treating Valley Fever, Fluconazole, which caused his symptoms to worsen. In his Second Amended Complaint, Plaintiff states that in June 2013, he was diagnosed with Valley Fever. (Second Amended Complaint (SAC), ECF No. 19 at 3 ¶10, 7 ¶ 23; Feinberg Decl., ECF No. 35-8 ¶ 11.) Plaintiff alleges that he immediately requested that Dr. Chokatos start him on Fluconazole but Dr. Chokatos refused. (SAC at 7 ¶ 24.) Plaintiff states that Dr. Chokatos was the primary care physician on a yard with scores of Valley Fever patients and knew that the only medications shown to be effective in treating Valley Fever were certain triazole compounds, including Fluconazole. (SAC at 19 ¶ 22.) Plaintiff argues that Dr. Chokatos refused to consider that because Plaintiff had asthma he was at a heightened risk of developing a more serious case of Valley Fever. (Plaintiff's responses to UF Nos. 23, 25, and 33, ECF No. 48 at 5, 6.) Plaintiff argues that Dr. Chokatos's own evidence, the article by Carol A. Kaufmann, M.D., shows that he should have treated Plaintiff with Fluconazole because he had a pre-existing cardiopulmonary condition. (Chokatos Decl., ECF No. 35-4 ¶ 18 (Exh. B) at 18.)

In reply, Defendant declares that asthma is not a risk factor for the development of severe coccidioidomycosis, and that Plaintiff's mild asthma was not a pre-existing cardiopulmonary condition which placed Plaintiff at increased risk of developing severe disease. (Chokatos 2d Decl., ECF No. 49-1 at 3 ¶¶3, 4.)

## C.    Analysis

Plaintiff's disagreement with Defendant only presents a difference of opinion between a non-physician inmate and his treating physician, which is insufficient to defeat summary judgment here.[42]

Here, Plaintiff does not dispute that his claim is based upon symptoms including cough, body aches, joint pain, lethargy, emotional distress, and depression.  (SAC, Doc. 19 at 4 ¶ 11.)  Plaintiff's reported symptoms are sufficient to show that he had a serious medical need.  However, Plaintiff has not met his burden to present evidence of a genuine material fact in dispute that would affect the final determination in this case.

It is undisputed that Defendant saw Plaintiff and reviewed his medical records in response to his complaints of pain and lethargy, including reviewing the results of a blood test showing that Plaintiff had been exposed to Valley Fever.  (UF Nos. 21, 22.)    Based on Dr. Chokatos's medical training and evaluation, Dr. Chokatos refused to prescribe Fluconazole for Plaintiff and instead monitored his condition and ordered follow-up blood tests.  (UF Nos. 22-25.)    This course of treatment does not show any deliberate indifference to Plaintiff's complaints of pain, lethargy, and mental distress.  There is no evidence that Dr. Chokatos drew the inference that Plaintiff faced an excessive risk to his health without taking Fluconazole and acted unreasonably.

Plaintiff argues that Defendant should have taken into consideration that Plaintiff's asthma was a preexisting cardiopulmonary condition that placed him at heightened risk of

---

[42] Plaintiff's opinions differing from Dr. Chokatos's medical opinions are not admissible evidence.  Federal Rule of Evidence 701.  Plaintiff's statements expressing opinions regarding the adequacy of treatment rendered by Dr. Chokatos shall not be considered by the court.  Unlike in <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003), Plaintiff's opinions are not evidence that may be admissible in another form at trial, such as excerpts from a diary even if the diary itself is inadmissible.  <u>Fraser</u> at 1036 (At the summary judgment stage, the court can consider evidence if its contents could be presented in an admissible form at trial); <u>Aholelei v. Haw. Dep't of Pub. Safety</u>, 220 Fed.Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" and could be made admissible at trial).  Here, Plaintiff's opinions regarding the adequacy of medical treatment rendered by Dr. Chokatos do not satisfy the standards of personal knowledge, admissibility, and competence required by Federal Rule of Civil Procedure 56(c)(4), nor are they admissible under Federal Rule of Evidence, section 701.

developing a severe form of Valley Fever, and should have concluded that Plaintiff should be prescribed Fluconazole before his infection disseminated. Plaintiff has presented no admissible evidence of any change in his condition attributed to the medication Fluconazole or lack thereof, or any evidence that Dr. Chokatos's evaluation of Plaintiff fell below the medical standard of care so significantly that it could constitute deliberate indifference under the Eighth Amendment. Rather, Plaintiff's arguments rely entirely on his non-medical opinion. Plaintiff is not competent to provide medical opinion evidence sufficient to create any triable issue of fact in this case. See Fed. R. Civ. P. 56(c)(4) (affidavit or declaration used to oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated). Plaintiff agrees in his deposition that he is not a doctor, has no medical training, and has no medical education. (see Cooper Depo., ECF No. 35-7 at 12:18-24.)

Therefore, the court finds that Plaintiff has not shown a triable issue of fact for trial. Accordingly, summary judgment should be granted in favor of Defendant in this case, and the court recommends granting Defendant's motion for summary judgment.

## VII.    RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Defendant's motion for summary judgment, filed on May 18, 2018, be GRANTED;

2.    Judgment be entered in favor of Defendant; and

3.    The Clerk be directed to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed **within ten (10) days** after the date the objections are filed. The parties are advised that failure to file objections within the specified time may result in the waiver of rights

on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **February 8, 2019**                              **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE